**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **BRANDEN P. STEWART, on behalf of himself and all others similarly situated,** | |
| **Plaintiff,** | Case No. |
| **v.** | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| **RUSH STREET GAMING, LLC and MIDWEST GAMING & ENTERTAINMENT, LLC d/b/a RIVERS CASINO,** | **DEMAND FOR JURY TRIAL** |
| **Defendants.** | |

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff Branden P. Stewart ("Plaintiff"), on behalf of himself and others similarly situated, brings this Class and Collective Action Complaint against Rush Street Gaming, LLC and Midwest Gaming & Entertainment, LLC d/b/a Rivers Casino in Des Plaines, Illinois (collectively, "Defendants").

**NATURE OF SUIT**

1.      Plaintiff brings this wage and hour class and collective action against Defendants Rush Street Gaming, LLC and Midwest Gaming & Entertainment, LLC d/b/a Rivers Casino in Des Plaines, Illinois.  This case concerns two types of wage and hour violations.  First, Defendants failed to pay minimum wage to tipped employees in compliance with the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by paying a sub-minimum direct cash wage and claiming a tip credit without providing notice of the provisions of Section 3(m) of the FLSA.  *See* 29 U.S.C. § 203(m); 29 C.F.R. § 531.59(b).  Second, Defendants directly deducted the cost of dry-cleaning

employer-required uniforms from the wages of their employees in violation of the FLSA and the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. Ann. 105/1, *et seq*.

2.  First, Defendants pay hourly, non-exempt tipped employees, like Plaintiff, a direct cash wage that is less than the federal minimum wage and claim a "tip credit" to make up the difference between the direct cash wage and the minimum wage (*i.e.*, credit a portion of the employees tips as wages to meet federal wage requirements). However, the FLSA has stringent notice requirements that must be met before paying a sub-minimum direct cash wage. *See* 29 U.S.C. § 203(m); 29 C.F.R. § 531.59(b). Here, Defendants failed to satisfy those requirements and are, therefore, not entitled to claim a tip credit and owe Plaintiff and all other similarly situated employees the difference between their direct cash wage and the federal minimum wage for each hour worked during the three years preceding the filing of this Class and Collective Action Complaint.

3.  Second, Plaintiff and other similarly situated employees are required to wear employer-issued uniforms during the performance of their duties on behalf of Defendants. These employer-mandated uniforms consist of two dry-clean-only shirts featuring Defendants' branding, dry-clean-only dress slacks, and black shoes. These uniforms are meant to identify Plaintiff and other similarly situated employees as Defendants' employees for the convenience of Defendants' customers. Defendants require Plaintiff and other similarly situated employees to maintain a high level of personal hygiene and appearance given their interactions with customers, which includes dry-cleaning the required uniforms. To that end, Defendants encourage employees to use Defendants' in-house dry-cleaning services. Defendants deduct these dry-cleaning costs directly from the wages of Plaintiff and other similarly situated employees. Given that the dry-cleaning expenses are uniform maintenance costs that primarily benefit Defendants, they cannot be credited as wages for purposes of the FLSA and the IMWL. Plaintiff and all similarly situated employees

CLASS AND COLLECTIVE ACTION COMPLAINT

are paid a direct cash wage below the applicable federal and Illinois minimum wages such that the dry cleaning deductions necessarily bring their wages below the minimum wage rates required by the FLSA and IMWL in violation of those laws.

## JURISDICTION AND VENUE

4.      The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions.  This Court possesses subject matter jurisdiction over Plaintiff's FLSA claims based upon 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. The Court likewise has subject matter jurisdiction over Plaintiff's state-law wage and hour claims because they are so related to the FLSA claims that they form part of the same case and controversy, satisfying supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

5.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this judicial district and Defendants are each subject to personal jurisdiction in this district.  Plaintiff worked for Defendants at their Rivers Casino property, which Defendants operate in Des Plaines, Illinois within the Eastern Division of the Northern District of Illinois.

## PARTIES

6.      Plaintiff is an individual residing in this judicial district.  From approximately June 2014 through July 2019, Plaintiff worked for Defendants as an employee at Rivers Casino located in Des Plaines, Illinois as a table games dealer and dual rate supervisor.  Plaintiff's executed Consent to Join is attached and incorporated herein as **Exhibit A** pursuant to 29 U.S.C. 216(b).

7.      Defendant Rush Street Gaming, LLC ("Rush Street") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Chicago, Illinois.

CLASS AND COLLECTIVE ACTION COMPLAINT

8.     Defendant Midwest Gaming and Entertainment, LLC d/b/a Rivers Casino in Des Plaines, Illinois ("Midwest Gaming") is a limited liability company organized under the laws of the State of Delaware with, according to its filings with the Illinois Secretary of State, its principal place of business in Chicago, Illinois.  However, Midwest Gaming is the corporate entity affiliated with the Rivers Casino property located in Des Plaines, Illinois.  Upon information and belief, Midwest Gaming's principal place of business is in Des Plaines, Illinois.

9.     Midwest Gaming is a wholly-owned subsidiary of Rush Street.  Together, Rush Street and Midwest Gaming operate the Rivers Casino property located in Des Plaines, Illinois.  In addition, Rush Street operates three other casinos—Rivers Casino in Pittsburgh, Pennsylvania, Rivers Casino in Philadelphia, Pennsylvania, and Rivers Casino in Schenectady, New York— where Rush Street employs casino workers who are similarly situated to Plaintiff.

## COMMON FACTUAL ALLEGATIONS

### Defendants Jointly Employed Plaintiff and All Others Similarly Situated

10.     Rush Street operates a hub and spoke employment structure whereby, Rush Street, at the operational center of the wheel, has spokes leading out to each of its individual casino subsidiaries, including Defendant Midwest Gaming, Rivers Casino in Pittsburgh, Pennsylvania, Rivers Casino in Philadelphia, Pennsylvania, and Rivers Casino in Schenectady, New York (collectively, the subsidiary casino entities).  By design, each individual subsidiary casino entity is the acknowledged employer of the employees, like Plaintiff, who physically work at the casino property.  However, as a matter of economic reality, from its position at the operational center of this structure, Rush Street has the ability to and, in fact, does operate its subsidiary casinos and instructs the entities on how and when to execute employment policies controlling Plaintiff and other similarly situated employees' employment conditions.  The subsidiaries casino entities must and do follow Rush Street's operational instructions.  Due to the pervasive control Rush Street

CLASS AND COLLECTIVE ACTION COMPLAINT

both possesses and exercises over the employees at each of its casinos (both directly and indirectly), Rush Street is a joint employer of Plaintiff and all others similarly situated, along with each respective subsidiary casino entity, like Defendant Midwest Gaming.

11. There is no material difference between the manner in which Rush Street treats each of its casino properties or the Plaintiff (and those who are similarly situated to him) who work at each of the Rush Street casino properties. Each of the casino properties is akin to a regional office of Rush Street's nationwide gaming operation with Rush Street in control and directing the policies and procedures across the country that affect the day-to-day lives of Plaintiff (and those who are similarly situated) from its Chicago, Illinois offices.

12. At all relevant times, Rush Street, with and through the individual subsidiary casino entities it controls, jointly employed each Plaintiff (and other similarly situated employees) because:

 a. Rush Street had the right to and did exercise control over the hiring and firing of Plaintiff and all other similarly situated employees;

 b. Rush Street had the right to and did supervise the work schedules, conditions of employment, and the manner in which Plaintiff and all other similarly situated employees performed their jobs;

 c. Rush Street had the right to and did determine the rate and method of payment for Plaintiff and all other similarly situated employees; and

 d. Rush Street was primarily responsible for and did maintain the employment records for Plaintiff and all other similarly situated employees.

**Defendants Cannot Claim a Tip Credit Pursuant to the FLSA**

13. Under the FLSA, an employer may, in certain circumstances, take a "tip credit" toward its federal minimum wage obligations for tipped employees. Pursuant to the explicit

language of the FLSA, a tip credit may not be taken "with respect to any tipped employee unless such employee has been informed by the employer of the provisions of [29 U.S.C. § 203(m)], and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(2).

14. The federal regulation interpreting the language of the FLSA's tip credit notice requirements explain as follows:

> [A]n employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, i.e.: [1] The amount of the cash wage that is to be paid to the tipped employee by the employer; [2] the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; [3] that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and [4] that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

*See* 29 C.F.R. § 531.59(b).

15. Defendants employ Plaintiff and other similarly situated tipped employees and pay them a direct cash wage that is less than the FLSA's federal minimum wage ($7.25 per hour) but failed to notify them of the tip credit requirements of the FLSA prior to paying a sub-minimum direct cash wage. Despite this violation of the FLSA's tip credit notice provisions, Defendants have taken a tip credit toward their obligations to pay the federal minimum wage to Plaintiff and all other similarly situated tipped employees. At all relevant times, Plaintiff has been paid a direct cash wage of $6.25 per hour (or less) and Defendants have improperly claimed a tip credit to bridge the gap between the direct cash wage and the federal minimum wage.

16. Specifically, Plaintiff and other similarly situated employees are not informed, in advance of Defendants' use of the tip credit, of: (1) the additional amount by which the wages of

CLASS AND COLLECTIVE ACTION COMPLAINT

the tipped employee are increased on account of the tip credit claimed by Defendants, which amount may not exceed the value of the tips actually received the employee; (2) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (3) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

17.     Likewise, when Defendants change the amount of the tip credit they claim against their obligation to pay Plaintiff and other similarly situated employees the FLSA's required minimum wage, Defendants do not inform Plaintiff and other similarly situated employees of the change in the amount of the tip credit claimed.

18.     Defendants' FLSA violations alleged herein were willful in that Defendants either knew of the specific FLSA requirements and prohibitions at issue at the time of the alleged violations and intentionally did not comply with them, or showed reckless disregard for the matter of whether their conduct violated the FLSA.

19.     As a result of Defendants' above-described FLSA violations, Plaintiff and other similarly situated employees are entitled to recover from Defendants the amount of the sum of (1) the tip credit taken (*i.e.*, the difference between the direct cash wage and the required federal minimum wage), which is the amount of the unpaid minimum wages from three years preceding the filing of this Collective Action Complaint to the present, (2) an additional equal amount as liquidated damages, and (3) a reasonable attorneys' fee and costs of this action.

CLASS AND COLLECTIVE ACTION COMPLAINT

**Defendants' Deduction of Uniform Dry-cleaning Costs Cannot be Credited as Wages and Violate the FLSA and IMWL**

20.     Defendants have a common or substantially similar policy requiring Plaintiff and other similarly situated employees to wear employer-issued uniforms during the performance of their job duties at Defendants' casinos.

21.     These employer-mandated uniforms consist of two dry-clean-only shirts featuring Defendants' branding, dry-clean-only black dress slacks, and black closed-toed shoes.  The purpose of these uniforms is to identify Plaintiff and other similarly situated employees as Defendants' employees during the course of their work so that customers may interact with them.

22.     Given that Defendants are in the gaming and hospitality industry, Defendants require Plaintiff and other similarly situated employees to maintain a high level of personal hygiene and professional appearance.  This requirement exists because Plaintiff and other similarly situated employees interact with customers during the performance of their job duties.  Part of maintaining the highest levels of personal hygiene and professional appearance, is dry-cleaning the employer-issued uniforms.  As a result, Defendants require Plaintiff and other similarly situated employees to dry-clean their uniforms.

23.     Outside their work for Defendants, Plaintiff and other similarly situated employees have no need to, desire to, or use for dry-cleaning their employer-issued, branded uniforms. Instead, these expenses for dry-cleaning their employer-required uniforms relate exclusively to Plaintiff's and other similarly situated employees' work for Defendants and confers no benefit on the employees in their personal life.

24.     In fact, Defendants encourage Plaintiff and other similarly situated employees to use Defendants' in-house dry-cleaning services.  Defendants deduct these dry-cleaning costs directly from the wages of Plaintiff and other similarly situated employees.

25.     Pursuant to the FLSA, only "other facilities" possessing the character of being "primarily for the benefit and convenience of the employee" may be credited as wages. *See* 29 U.S.C. § 203(m); *see also* 29 C.F.R. § 531.32.  The types of "other facilities" that may be credited as wages and are primarily for the benefit of the employee are universally "other facilities" arising in or having utility in an employee's personal life.  Conversely, costs arising from employment are considered primarily for the benefit of the employer and may not be credited as wages.  In this case, the uniform dry-cleaning costs arise purely from Plaintiff's and other similarly situated employees' work on behalf of Defendants and are of no use in the employees' personal lives. Further, because Plaintiff (who at all relevant times earned a direct cash wage equal to or less than $6.25 per hour) and all other similarly situated employees were paid a direct cash wage at or below $7.25 per hour, the dry-cleaning costs necessarily cut into the minimum wage in violation of the FLSA.

26.     For example, as of a pay period ending June 13, 2019, Defendants had deducted $101.25 from Plaintiff's wages for Defendants' dry-cleaning services of Plaintiff's employer-required uniform.  Given that, pursuant to the FLSA, Defendants claimed a tip credit in the amount of the difference between the direct cash wage ($6.25 per hour) and the federal minimum wage ($7.25) (and assuming the tip credit is valid, which Plaintiff does not concede—in fact, Plaintiff expressly alleges Defendants are not entitled to a tip credit at all), Defendants, at most, only paid Plaintiff $7.25 per hour.  As a result, any deduction causes a minimum wage violation under the FLSA.

27.     Pursuant to the IMWL, "[n]o allowances for supply, maintenance or laundering of required uniforms shall be permitted as part of the minimum wage." *See* Ill. Admin. Code tit. 56, § 210.140.  As such, Defendants may not claim any allowance for dry-cleaning as part of the minimum wages for Plaintiff and other similarly situated employees.  Where Plaintiff earned a

CLASS AND COLLECTIVE ACTION COMPLAINT

direct cash wage $6.25 per hour (less than the then-applicable Illinois minimum wage of $8.25 per hour), Defendants' deduction of $101.25 for dry-cleaning their employer-required uniforms necessarily caused a caused a minimum wage violation under the IMWL. The same is true for other similarly situated employees paid at or below the IMWl's mandated minimum wage at the time of the dry-cleaning deduction.

## COLLECTIVE ACTION ALLEGATIONS

28.     Plaintiff brings Count I, the FLSA claim arising out of Defendants' failure to pay minimum wage to tipped employees despite not being entitled to a tip credit, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself individually and the following collective action class:

### Fair Labor Standards Act Collective – Entitlement to Tip Credit

All persons employed and paid a direct cash wage of $7.25 per hour or less at Rivers Casino in Des Plaines, Illinois, Rivers Casino in Pittsburgh, Pennsylvania, Rivers Casino in Philadelphia, Pennsylvania, and Rivers Casino in Schenectady, New York, at any time from three years prior to the filing of the Collective Action Complaint to the present.

29.     Plaintiff brings Count II, the FLSA claim arising out of Defendants' deduction of dry-cleaning costs for employer-required uniforms from employees' wages, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself individually and the following collective action class:

### Fair Labor Standards Act Collective – Uniform Dry-Cleaning Deduction Policy

All persons employed and paid a direct cash wage of $7.25 per hour or less at Rivers Casino in Des Plaines, Illinois, Rivers Casino in Pittsburgh, Pennsylvania, Rivers Casino in Philadelphia, Pennsylvania, and Rivers Casino in Schenectady, New York, who had a uniform dry-cleaning deduction from their wages, at any time from three years prior to the filing of the Collective Action Complaint to the present.

30.     Plaintiff's FLSA claims (Counts I and II) may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).  Plaintiff, individually and on behalf of all others similarly situated, seeks relief on a collective basis challenging Defendants' above-described FLSA violations. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Defendants' records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action through U.S. Mail, email, text message, and posting.

31.     Plaintiff brings Count III, the IMWL claim arising out of Defendants' deduction of dry-cleaning costs for employer-required uniforms from employees' wages, as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself individually and the following class:

**Illinois Minimum Wage Law Class – Uniform Dry-Cleaning Deduction Policy**

All persons employed and paid a direct cash wage equal to or less than the applicable Illinois minimum wage at Rivers Casino in Des Plaines, Illinois, who had a uniform dry-cleaning deduction from their wages, at any time from three years prior to the filing of the Collective Action Complaint to the present

32.     Plaintiff's Rule 23 claim, described in detail below, satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

33.     This class numbers in, at least, the hundreds of people.  As a result, joinder of all class members in a single action is impracticable.  Class members may be informed of the pendency of this action through U.S. mail, text message, e-mail, and/or posting of an approved notice.

34.     There are common questions of fact and law to the class that predominate over any questions affecting only individual class members.  The questions of law and fact common to the class arising from Defendants' actions include, without limitation, the following:

a.     Whether Defendants' dry-cleaning deduction policy constitutes maintenance or laundering of an employer-required uniform within the meaning of the IMWL; and

b.     Whether Defendants' dry-cleaning deductions cut into the minimum or overtime wages required to be paid these employees;

35.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

36.     Plaintiff's claims are typical of those of the class in that class members have been employed in the same or similar position as Plaintiff and were subject to the same or similar unlawful policies and practices as Plaintiff.

37.     A class action is the superior method for the fair and efficient adjudication to Plaintiff's claim.  Defendants have acted or refused to act on grounds generally applicable to the class.  The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of class members to protect their interests.

38.     Plaintiff is an adequate representative because Plaintiff is a member of each of the respective classes that he seeks to represent, and Plaintiff's interests do not conflict with the interests of the members of those classes.  The interests of the members of the classes will be fairly

CLASS AND COLLECTIVE ACTION COMPLAINT

and adequately protected by Plaintiff and Plaintiff's undersigned counsel, who are experienced prosecuting complex wage and hour, employment, and class action litigation.

39.     Maintenance of this action is a class action is a fair and efficient method for adjudication of this controversy.  It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

<u>**COUNT I**</u>

**Violation of the Fair Labor Standards Act of 1938**

**29 U.S.C. § 216(b)**

**Failure to Pay Minimum Wage - Entitlement to Tip Credit**

40.     At all relevant times, Plaintiff and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq*.

41.     The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  *See* 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

42.     Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because they are both enterprises engaged in interstate commerce and their employees are engaged in commerce.  At all relevant times, each Defendant is or has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, has had an annual gross volume of sales made or business done of not less than $500,000.

CLASS AND COLLECTIVE ACTION COMPLAINT

43.     At all relevant times, Defendants were "employers" of Plaintiff and all similarly situated employees within the meaning of the FLSA.  *See* 29 U.S.C. § 203(d).

44.     At all relevant times, Plaintiff and all similarly situated employees were Defendants' "employees" within the meaning of the FLSA.  *See* 29 U.S.C. § 203(e).

45.     Plaintiff and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA.  Accordingly, Plaintiff and all similarly situated employees must be paid minimum wages in accordance with 29 U.S.C. § 206.

46.     Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.  *See* 29 U.S.C. § 207(a).

47.     Although the FLSA contains some exceptions (or exemptions) from the minimum wage and overtime requirements, none apply here.

48.     Plaintiff and all similarly situated employees are victims of uniform or substantially similar compensation policies and practices.

49.     By paying a sub-minimum direct cash wage and claiming a tip credit without providing Plaintiff and all others similarly situated employees the notice required by 29 U.S.C. § 203(m) and its interpreting regulation 29 C.F.R. § 531.39(b), Defendants have violated the FLSA's minimum wage provisions.

50.     Plaintiff and all similarly situated employees are entitled to damages equal to the mandated minimum wage within the three (3) years preceding the filing of the this Class and Collective Action Complaint plus periods of equitable tolling, because, as described above, Defendants acted willfully and knew, or showed reckless disregard of, whether their conduct was prohibited by the FLSA.

51.     Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).  Alternatively, should the Court find Defendants acted in good faith or with reasonable grounds in failing to pay minimum wage, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

52.     As a result of these violations of the FLSA's minimum wage provisions, compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees.  Accordingly, pursuant to 29 U.S.C. § 216(b), Defendants are liable for the unpaid minimum wages along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

**WHEREFORE**, Plaintiff requests the Court enter judgment for Plaintiff individually and on behalf of all similarly situated employees awarding the following relief:

a.  damages for unpaid minimum wages and overtime under 29 U.S.C. § 216(b);

b.  reasonable attorneys' fees under the FLSA;

c.  liquidated damages and/or pre-judgment interest;

d.  costs of suit under 29 U.S.C. § 216(b); and

e.  any further relief that the Court may deem just and equitable.

CLASS AND COLLECTIVE ACTION COMPLAINT

## COUNT II

### Violation of the Fair Labor Standards Act of 1938

### 29 U.S.C. § 216(b)

### Failure to Pay Minimum Wage – Dry-Cleaning Deduction Policy

53.     At all relevant times, Plaintiff and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq.*

54.     The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  *See* 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

55.     Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because they are both enterprises engaged in interstate commerce and their employees are engaged in commerce.  At all relevant times, each Defendant is or has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, has had an annual gross volume of sales made or business done of not less than $500,000.

56.     At all relevant times, Defendants were "employers" of Plaintiff and all similarly situated employees within the meaning of the FLSA.  *See* 29 U.S.C. § 203(d).

57.     At all relevant times, Plaintiff and all similarly situated employees were Defendants' "employees" within the meaning of the FLSA.  *See* 29 U.S.C. § 203(e).

58.     Plaintiff and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA.  Accordingly, Plaintiff and all similarly situated employees must be paid minimum wages in accordance with 29 U.S.C. § 206.

59.     Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. *See* 29 U.S.C. § 207(a).

60.     Although the FLSA contains some exceptions (or exemptions) from the minimum wage and overtime requirements, none apply here.

61.     Plaintiff and all similarly situated employees are victims of uniform or substantially similar compensation policies and practices.

62.     By deducting the cost of dry-cleaning employer-required uniforms from the wages of Plaintiff and all similarly situated employees, Defendants have cut into the minimum wages paid these employees. Because these dry-cleaning costs are primarily for the benefit of Defendants as employers and do not benefit employees, they cannot be credited as "other facilities" constituting wages for purpose of paying Plaintiff and all similarly situated employees $7.25 per hour for each hour worked during a work week. Given that Plaintiff and all similarly situated employees are paid a direct cash wage at or below the FLSA's $7.25 per hour minimum wage, the dry-cleaning deductions violate the FLSA's minimum wage provisions.

63.     Plaintiff and all similarly situated employees are entitled to damages equal to the mandated minimum wage within the three (3) years preceding the filing of the this Class and Collective Action Complaint plus periods of equitable tolling, because, as described above, Defendants acted willfully and knew, or showed reckless disregard of, whether their conduct was prohibited by the FLSA.

64.     Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified

at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants acted in good faith or with reasonable grounds in failing to pay minimum wage, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

65. As a result of these violations of the FLSA's minimum wage provisions, compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees. Accordingly, pursuant to 29 U.S.C. § 216(b), Defendants are liable for the unpaid minimum wages along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

**WHEREFORE**, Plaintiff requests the Court enter judgment for Plaintiff individually and on behalf of all similarly situated employees awarding the following relief:

    a. damages for unpaid minimum wages and overtime under 29 U.S.C. § 216(b);

    b. reasonable attorneys' fees under the FLSA;

    c. liquidated damages and/or pre-judgment interest;

    d. costs of suit under 29 U.S.C. § 216(b); and

    e. any further relief that the Court may deem just and equitable.

## COUNT III

**Violation of the Illinois Minimum Wage Law**

**820 Ill. Comp. Stat. Ann. 105/12**

**Failure to Pay Minimum Wage – Dry-Cleaning Deduction Policy**

66. At all relevant times, Plaintiff and similarly situated employees have been entitled to the benefits and protections of the IMWL. *See* 820 Ill. Comp. Stat. Ann. 105/4.

67. At all relevant times, Defendants have been the "employers" of Plaintiff and similarly situated employees within the meaning of the IMWL. *See* 820 Ill. Comp. Stat. Ann. 105/3.

CLASS AND COLLECTIVE ACTION COMPLAINT

68.     At all relevant times, Plaintiff and similarly situated employees have been "employees" of Defendants within the meaning of the IMWL. *Id*.

69.     Plaintiff and all similarly situated employees are victims of uniform or substantially similar compensation policies and practices.

70.     By deducting the cost of dry-cleaning employer-required uniforms from the wages of Plaintiff and all similarly situated employees, Defendants have violated the IMWL's minimum wage provisions. *See* 820 Ill. Comp. Stat. Ann. 105/4.

71.     Pursuant to the IMWL, "[n]o allowances for supply, maintenance or laundering of required uniforms shall be permitted as part of the minimum wage. *See* Ill. Admin. Code tit. 56, § 210.140.

72.     Given that Plaintiff and all other similarly situated employees are paid at or below the Illinois minimum wage, every deduction is necessarily a minimum wage violation.  Here, the deductions for dry-cleaning employer-required uniforms created minimum wage violations in each work week during which they occurred.

73.     Plaintiff and all similarly situated employees are entitled to damages equal to three times (treble) the dry-cleaning deductions plus 5% of the deductions accruing each month within the three (3) years preceding the filing of the Class and Collective Action Complaint. *See* 820 Ill. Comp. Stat. Ann. 105/12.

74.     As a result of these violations of the IMWL minimum wage provisions, compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees.  Accordingly, pursuant to *See* 820 Ill. Comp. Stat. Ann. 105/12, Defendants are liable for three times (treble) the gaming license deductions plus 5% of the deductions accruing each month, reasonable attorneys' fees, and costs of this action. *See* 820 Ill. Comp. Stat. Ann. 105/12.

**WHEREFORE**, Plaintiff requests the Court enter judgment for Plaintiff individually and on behalf of all similarly situated employees awarding the following relief:

      a.   treble damages for unpaid minimum wages plus interest pursuant to the IMWL;

      b.   reasonable attorneys' fees and costs pursuant to the IMWL;

any further relief that the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

CLASS AND COLLECTIVE ACTION COMPLAINT

Dated:  April 28, 2020          Respectfully submitted,

**WERMAN SALAS P.C.**

*/s/ Douglas M. Werman*
Douglas M. Werman
77 W. Washington Street, Suite 1402
Chicago, IL 60602
Telephone:     312-419-1008
Facsimile:      312-419-1025
Email: dwerman@flsalaw.com

**STUEVE SIEGEL HANSON LLP**
George A. Hanson, MO Bar No. 43450
*pro hac vice application forthcoming*
Alexander T. Ricke, IL Bar No. 6313820
*pro hac vice application forthcoming*
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:     816-714-7100
Facsimile:      816-714-7101
Email:  hanson@stuevesiegel.com
Email:  ricke@stuevesiegel.com

**McCLELLAND LAW FIRM, P.C.**
Ryan L. McClelland, MO Bar No. 59343
*pro hac vice application forthcoming*
Michael J. Rahmberg, MO Bar No. 66979
*pro hac vice application forthcoming*
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068
Telephone:     816-781-0002
Facsimile:      816-781-1984
Email:  ryan@mcclellandlawfirm.com
Email:  mrahmberg@mcclellandlawfirm.com

**Attorneys for Plaintiff**